**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0694-24

PAUL SCHORR, P.E.,

     Petitioner-Appellant,

v.

ED POTOSNAK,
COMMISSIONER,
NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

     Respondent-Respondent.

_____

Submitted May 6, 2026 – Decided August 11, 2026

Before Judges Gummer and Jacobs.

On appeal from the New Jersey Department of Environmental Protection.

Paul Schorr, self-represented appellant.

Jennifer Davenport, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Lindsay H. Carter, Deputy Attorney General on the brief).

PER CURIAM

On September 23, 2024, the New Jersey Department of Environmental Protection (DEP) adopted the 2024 New Jersey Statewide Water Supply Plan (SWSP). See Div. of Water Res. Mgmt., Dep't of Env't Prot. et al., 2024 New Jersey Statewide Water Supply Plan (2024). In this appeal, Paul Schorr challenges that adoption. Because Schorr has not demonstrated the DEP acted arbitrarily, capriciously, or unreasonably in adopting the 2024 SWSP, we affirm.

I.

The Legislature enacted the Water Supply Management Act (WSMA), N.J.S.A. 58:1A-1 to -17, to "ensure an adequate supply and quality of water for [New Jersey] citizens . . . and to protect the natural environment of the waterways of the State." N.J.S.A. 58:1A-2. To further that goal, the Legislature delegated to the DEP "the power to manage the water supply." Ibid. The WSMA "gives DEP broad responsibility to manage the State's water resources 'to ensure an adequate supply and quality of water for citizens of the State, both present and future, and to protect the natural environment of the waterways of the State.'" In re Agric., Aquacultural, & Horticultural Water Usage Certification Rules, 410 N.J. Super. 209, 218 (App. Div. 2009) (quoting N.J.S.A. 58:1A-2). The WSMA empowers the DEP to "[p]erform any and all acts and issue such

2

orders as are necessary to carry out the purposes and requirements of [the WSMA]" and to "[d]elegate . . . responsibilities and duties to personnel of the department as deemed appropriate for the purpose of administering the requirements of [the WSMA]."  N.J.S.A. 58:1A-15(a), (k).

In the WSMA, the Legislature, among other things, expressly authorized the DEP to "adopt[] . . . a program to study and manage the State's water resources and plan for emergencies and future water needs."  N.J.S.A. 58:1A-2. The Legislature required the DEP to "prepare and adopt the [SWSP]," which the DEP must "revise[] and update[] at least once every five years."  N.J.S.A. 58:1A-13(a).  The Legislature enumerated seven items the DEP must include in the SWSP:

> (1) An identification of existing Statewide and regional ground and surface water supply sources, both interstate and intrastate, and the current usage thereof;
>
> (2) Projections of Statewide and regional water supply demands for the duration of the plan;
>
> (3) Recommendations for improvements to existing State water supply facilities, the construction of additional State water supply facilities, and for the interconnection or consolidation of existing water supply systems, both interstate and intrastate;
>
> (4) Recommendations for the diversion or use of fresh surface or ground waters and saline surface or ground waters for aquaculture purposes;

(5) Recommendations for legislative and administrative actions to provide for the maintenance and protection of watershed areas;

(6) Identification of lands purchased by the State for water supply facilities that currently are not actively used for water supply purposes, including, but not limited to, the Six Mile Run Reservoir Site, with recommendations as to the future use of these lands for water supply purposes within or outside of the planning horizon for the plan; and

(7) Recommendations for administrative actions to ensure the protection of ground and surface water quality and water supply sources.

[N.J.S.A. 58:1A-13(b).]

The Legislature did not impose any other requirements regarding the contents of the SWSP.

The Legislature established a Water Supply Advisory Council (the Council), N.J.S.A. 13:1B-49.2, and authorized it to "[a]dvise the [DEP] concerning the preparation, adoption and revision of the [SWSP]," N.J.S.A. 13:1B-49.3. The Council consists of eleven members appointed by the Governor with the advice and consent of the Senate. The Legislature determined the make-up of the Council's membership:

Of these members, one shall be a representative of the agricultural community, one shall be a representative of industrial and commercial water users, one shall be a representative of residential water users, two shall be

A-0694-24

representatives of investor-owned water companies, two shall be representatives of municipal or county water companies, one shall be a representative of private watershed protection associations, one shall be a representative of the academic community, one shall be a representative of golf course superintendents located in the State, and one shall be a representative of the nursery or landscape industry or a landscape irrigation contractor in the State as recommended by the Alliance for Water Conservation.

[N.J.S.A. 13:1B-49.2.]

Before adopting any revision to the SWSP, the DEP also must consult with the New Jersey Water Supply Authority, the New Jersey Environmental Infrastructure Trust, the Highlands Water Protection and Planning Council "as well as with the public and private water purveyors." N.J.S.A. 58:1A-13.3; see also N.J.S.A. 58:1A-13(d). The Legislature did not impose any other requirements regarding the backgrounds, education, or experience of Council members or others involved in preparing the SWSP.

The Legislature also set forth in the WSMA the procedures the DEP had to follow in adopting the SWSP and its revisions:

Prior to adopting the plan, including any revisions and updates thereto, the [DEP] shall:

(1) Prepare and make available to all interested persons a copy of the proposed plan or proposed revisions and updates to the current plan;

5

(2) Conduct public meetings in the several geographic areas of the State on the proposed plan or proposed revisions and updates to the current plan; and

(3) Consider the comments made at these meetings, make any revisions to the proposed plan or proposed revisions and updates to the current plan as it deems necessary, and adopt the plan.

[N.J.S.A. 58:1A-13(c).]

The Legislature did not require any other procedures for the adoption of the SWSP or revisions to it.

On September 16, 2022, the DEP sent an email addressed to "Water Supply Management Interested Parties," stating that "[a]s part of the planning process for the draft 2023 - 2028" SWSP, the DEP would hold a "series of stakeholder sessions to provide information and discuss water availability, climate change implications for water availability and water supply demands, environmental justice and equity issues related to water supply management, and specific water management issues for stressed water resources." The email contained a preliminary schedule for the meetings.

On February 26, 2024, the DEP released a draft of the 2024 SWSP for public comment. During the following sixty-day public comment period, the DEP received fifty-four written comments, including some comments Schorr had submitted. The DEP also held two public meetings, one in person and one

virtual.  Schorr did not attend either meeting.  According to the DEP, it "also held two virtual meetings with New Jersey's regional planning entities and one virtual interagency meeting" and "received assistance from current and former members and advisors of the . . . Council in developing the [final] 2024 [SWSP]." Div. of Water Res. Mgmt., Dep't of Env't Prot. et al., 2024 New Jersey Statewide Water Supply Plan Summary of Response to Comment 1 (2024).  As part of that process, the DEP met with representatives of the Delaware River Basin Commission, the New Jersey Highlands Water Protection and Planning Council, the New Jersey Pinelands Commission, New Jersey Water Supply Authority, Rutgers University, the Clean Water Council, and the Environmental Justice Stakeholder Advisory Group.  2024 New Jersey Statewide Water Supply Plan, at 2.

The DEP published a twenty-page "Summary of Response to Comment" regarding the draft 2024 SWSP.  See 2024 New Jersey Statewide Water Supply Plan Summary of Response to Comment.  In that document, the DEP "summarize[d] the comments [it had] received" and "the changes [it had] incorporated into the [f]inal [2024 SWSP]." Id. at 2.  The DEP published the final 2024 SWSP on September 23, 2024.

A-0694-24

Schorr appeals the DEP's decision to adopt the 2024 SWSP. He argues the DEP failed to "appoint a duly qualified licensed professional engineer to be in . . . charge of the 2024 [SWSP]" and "fail[ed] to conform to [certain] public participation provisions . . . ." He also contends the 2024 SWSP "does not plan the use of water in northeast New Jersey as required by N.J.S.A. 58:1A-1 et seq[.]" In response, the DEP argues its adoption of the 2024 SWSP should be affirmed because it "complied with the procedural requirements of the WSMA" and "the SWSP satisfies all of the substantive elements required by the WSMA at N.J.S.A. 58:1A-13(b) and is supported by substantial credible evidence in the record." The DEP also asserts Schorr improperly presents issues on appeal he did not raise during the public comment period.

II.

Our "role in reviewing agency actions is 'limited.'" In re Protest by El Sol Contracting & Constr. Corp., 260 N.J. 362, 373 (2025) (quoting In re Musick, 143 N.J. 206, 216 (1996)). We do "not overturn [agency] actions unless they are arbitrary, capricious, or unreasonable." Ibid. The party challenging the administrative action bears the burden of making that showing. Ibid. Mere disagreement with an agency's determination "does not make it arbitrary,

A-0694-24

capricious, or unreasonable." In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 495 (2021).

In determining whether an agency's decision was arbitrary, capricious, or unreasonable, we consider these questions:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 490 (quoting In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385 (2013)).]

We "review legal conclusions, including those reached by an administrative agency, de novo." In re Protest by El Sol Contracting & Constr. Corp., 260 N.J. at 373.

When interpreting a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[S]tatutory construction begins with an examination of the plain language of the statute, 'ascrib[ing] to the . . . words their ordinary meaning and significance.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (omission and

9

second alteration in original) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "We 'may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Ibid. (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)). "[W]e 'strive for an interpretation that gives effect to all of the statutory provisions and does not render any language inoperative, superfluous, void or insignificant.'" Fuster v. Township of Chatham, 259 N.J. 533, 547 (2025) (quoting G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 172 (1999)). To determine legislative intent, we "look not only at the particular statutory language but also to the design of the statute as a whole." Est. of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 219 (App. Div. 2004); see also Rozenblit v. Lyles, 245 N.J. 105, 122 (2021) (finding courts may "take into consideration the entire [legislative] scheme" (quoting Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 450-51 (2012))).

Schorr, who states he is a "Professional Engineer," faults the DEP for "not appoint[ing] a duly qualified licensed professional engineer to be in responsible charge of the 2024 New Jersey [SWSP] as required by N.J.S.A. 4[5]:8-42." N.J.S.A. 45:8-42 provides that "[n]o department . . . shall designate . . . an engineer or any person to be in responsible charge of professional engineering

10

work other than a duly qualified professional engineer who has been licensed by the State . . . ." Schorr has not demonstrated how the 2024 SWSP as a whole constitutes the type of "professional engineering work" that requires the appointment of a licensed professional engineer as the project manager under N.J.S.A. 45:8-42 or that the WSMA requires the appointment of a licensed professional engineer as a SWSP project manager.

In response to a similar comment Schorr made during the public comment period, the DEP accurately stated, "[a] professional engineer license is required for some activities, but [New Jersey] law does not require the use of a [professional engineer] to develop a water supply plan. Planning and specifically water supply planning can be conducted by a range of qualified scientists, planners, and engineers." Nothing in the WSMA requires the DEP to appoint a professional engineer as the SWSP project manager. Indeed, the Legislature did not require the appointment of a professional engineer on the Council. Instead, in the WSMA, the Legislature expressly authorized the DEP to "[d]elegate . . . responsibilities and duties to personnel of the department as deemed appropriate for the purpose of administering the requirements of [the WSMA]," N.J.S.A. 58:1A-15(k), and required the DEP to consult with entities consisting of individuals with a variety of backgrounds and abilities. Given that

11

clear statutory language, we discern nothing arbitrary, capricious, or unreasonable in the DEP's decision not to appoint a professional engineer as project manager of the 2024 SWSP.

Schorr argues the 2024 SWSP "does not plan the use of water in northeast New Jersey as required by [the WSMA]." In particular, he contends the 2024 SWSP did not comply with: N.J.S.A. 58:1A-13(b)(1)'s requirement to identify "existing Statewide ground and surface water supply sources" in that it did not "identify treated wastewater discharge as a source of [water] supply" for certain areas in the northeastern part of the State; N.J.S.A. 58:1A-13(b)(3)'s requirement to make "[r]ecommendations for improvements to existing State water supply facilities" in northeast New Jersey; and N.J.S.A. 58:1A-13(b)(5)'s requirement to make "[r]ecommendations . . . for the maintenance and protection of watershed areas"[1] by not addressing "contaminants adversely impacting drinking water such as nitrate in northeast New Jersey."

In making those arguments, Schorr raises issues – such as the purported failure to comply with federal regulations and coordinate with the federal government – he did not present in the comments he submitted to the DEP during

---

[1] Schorr cites N.J.S.A. 58:1A-13(b)(4), but, given the substance of his argument, we understand he meant to cite N.J.S.A. 58:1A-13(b)(5).

A-0694-24

the public comment period. "Ordinarily, an issue may not be raised on appeal if not raised in the proceedings below." N.J. Dep't of Env't Prot. v. Huber, 213 N.J. 338, 372 (2013). As the Supreme Court explained in Bergen Pines County Hospital v. New Jersey Department of Human Services, 96 N.J. 456, 474 (1984):

> To permit a party in court to raise objections . . . and to submit evidence concerning those objections that it failed to raise before the administrative agency at the appropriate time would be to undermine the very purpose of administrative agencies. In addition, it would force courts to review potentially-overwhelming reams of technical data and to resolve from scratch issues as to which it does not have particular expertise.

See also In re Adoption of N.J.A.C. 11:3-29 ex rel. State Dep't of Banking & Ins., 410 N.J. Super. 6, 26 (App. Div. 2009) (same).

But even considering his arguments and viewing the 2024 SWSP as a whole, we are unpersuaded Schorr demonstrated the DEP acted arbitrarily, capriciously, or unreasonably. The 2024 SWSP addressed each of the required elements of the subparts of N.J.S.A. 58:1A-13(b) about which Schorr complains. Schorr's "[m]ere disagreement" with how the DEP approached and determined those elements does not render the DEP's adoption of the SWSP "arbitrary, capricious, or unreasonable." In re Att'y Gen. Law Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. at 495.

13

Finally, Schorr argues the DEP "fail[ed] to conform to public participation provisions" of the Clean Water Act (CWA), 33 U.S.C. §§ 1251 to 1387, which, in turn, he contends constituted a violation of the New Jersey Administrative Procedures Act (APA), N.J.S.A. 52:14B-1 to -15, and N.J.S.A. 58:1A-13(d) of the WSMA. However, he has not demonstrated how the DEP purportedly violated the "public participation provisions" of any of those statutes or established that any such provisions of the CWA or APA apply to the DEP's adoption of the 2024 SWSP. See In re Provision of Basic Generation Serv. for Period Beginning June 1, 2008, 205 N.J. 339, 350 (2011) (setting forth a "multi-factor analysis to determine whether [the APA's] rulemaking requirements are implicated").

Nor has he demonstrated the DEP failed to conform to the procedures expressly imposed by the Legislature in the WSMA. See N.J.S.A. 58:1A-13(c) to (d), -13.3. To the contrary, the record demonstrates that before it adopted the final 2024 SWSP, the DEP prepared and made available a proposed SWSP, met with the statutorily-designated entities, provided a sixty-day public comment period, conducted public meetings, accepted and considered submitted comments, and released a summary of those comments and revisions it had made

14

to the draft SWSP in response to those comments.  On that record, we discern no procedural infirmity in the DEP's adoption of the 2024 SWSP.

To the extent we have not expressly addressed any other arguments made by Schorr, we have considered them and find they are without sufficient merit to warrant discussion in this opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

15